UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 22-CR-133-1 (CKK) |
| ) | |
| ARIAN TAHERZADEH ) | |

## ARIAN TAHERZADEH'S MEMORANDUM IN AID OF SENTENCING

### INTRODUCTION

Mr. Taherzadeh was arrested and charged by criminal complaint on April 6, 2022, with impersonation of a federal officer. He was held for seven days before being released into HISP and into the third party custody of his father. He had significant restrictions on his liberty including home incarceration with no movement. This very restrictive release was modified after 4 months of full compliance, but he remained on other significant conditions. To his credit, he has been in full compliance with his release conditions for more than a year and a half. Moreover, while the government was understandably concerned about the nature of the offense, and the media ran wild with speculation about terrorism and other bad intentions, the government's investigation, aided substantially by Mr. Taherzadeh, demonstrated that many of those concerns were "full of sound and fury, signifying nothing."[1]  Nevertheless, Mr. Taherzadeh recognizes the seriousness of the offenses he committed and stands prepared to accept the consequences of his actions. He readily admitted his conduct in a multi-hour confession immediately after his arrest and before having counsel appointed. He subsequently debriefed on several occasions, provided the government with information they did not have

---

[1] Shakespeare, W., 1992. *Macbeth*, Wordsworth Classics, 1992.

1

about his own conduct and that of others, and voluntarily turned over a weapon that the government did not find when it searched the apartment so it would not fall into the wrong hands. He also arranged to have weapons that had been stored in Virginia turned over to the government. Mr. Taherzadeh pleaded guilty to a superseding information on August 1, 2022. Both Mr. Taherzadeh and Mr. Ali, his codefendant were charged with the same conduct in Counts one and two, but Mr. Ali was also charged with a substantial separate and unrelated bank fraud that did not involve Mr. Taherzadeh.

While Mr. Taherzadeh is distinguishable from Mr. Ali because he was not charged in the separate bank fraud, he is also distinguishable because of his immediate, substantial and fulsome cooperation. His cooperation and his complete compliance with his release conditions support a significant departure and variance from the sentencing guidelines. Nevertheless, Mr. Taherzadeh recognizes that the seriousness of the offense warrants some period of incarceration. In light of these factors, we urge the Court to sentence Mr. Taherzadeh to not more than 18 months of incarceration, followed by a term of supervised release.

## SENTENCING FACTORS

When imposing a sentence, the Court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established for [the applicable offense and the applicable category of defendant as set forth in the Sentencing Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. 3553(a); *United States v. Booker*, 543 U.S. 220, 259 (2005). Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

*See* 18 U.S.C. 3582 (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." 18 U.S.C. 3553(a) (emphasis added).

**(1)       The United States Sentencing Guidelines.**

As this Court is aware, when sentencing a defendant, the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Rather, the Court must treat the Guidelines "as one factor among several" that §3553(a) requires the Court to consider. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth in § 3553(a). *Gall*, 552 U.S. at 50. Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve § 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an

3

individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. *Rita v. United States*, 551 U.S. 338, 348, 350 (2007). Consequently, this Court must "filter the Guidelines' general advice through §3553(a)'s list of factors." *Id*. at 358; *see also Gall*, 128 S.Ct. at 598 ("'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996))).

In this case, the parties agreed at the time of the plea that the offense level is 21. The parties estimated that the criminal history category is a category I, resulting in a range before departure of 37 to 46 month on Count One and a range of 0 to 12 months on Count 2. Count 3 is a misdemeanor and no guidelines apply. The Probation Office has suggested a different calculation, using an aggravating role adjustment that this Court rejected in the case of Mr. Taherzadeh's codefendant, Ali Haider. The Court should similarly reject it here. The government, in possession of all of the discovery and after extensive investigation, did not request such an assessment. Mr. Taherzadeh was not a leader or organizer of a criminal activity that involved five or more participants as defined by the Sentencing Guidelines – someone who is criminally responsible for the commission of the offense. Thus, Mr. Taherzadeh objects to this enhancement.

**(2)    The Nature and Circumstances of the Offense.**

Mr. Taherzadeh does not dispute the seriousness of the offense and he makes no excuses for his criminal actions. However, it is important to focus on what this case was as opposed to what it initially appeared to be. Mr. Taherzadeh was attempting to run a private security

4

company. He incorporated a limited liability company and registered it with the District of Columbia. He also obtained a D.C. Certificate of Licensure for USSP to act as a private detective business and applied to DCRA for a Special Police Officer license. His intentions were to operate within the law. However, he failed to do so when he began befriending legitimate law enforcement officers and pretending to be one himself. He also acknowledges that he committed fraud against the apartment complexes when he failed to pay significant rental obligations.

As the government conceded, the firearm seized during the search was a registered firearm in the District of Columbia. While Mr. Taherzadeh did not have a conceal and carry permit, he did register the firearm and evidenced an attempt to follow the law with respect to the firearms possession. Mr. Teharzadeh registered the firearm in D.C. and sought to abide by the law by seeking a conceal and carry permit.

Also, importantly, upon his arrest, Mr. Taherzadeh waived his Miranda rights and submitted to a 5 and ½ hour interview while handcuffed and under arrest. He was fully forthcoming and the information he provided, once confirmed by the government, allowed the government to properly assess the case for what it was. He neither falsely implicated others nor falsely exonerated others.

This conduct in this case was, as Mr. Taherzadeh acknowledged in his statement to law enforcement, an embarrassing set of misrepresentations that got out of control. He never intended to cause harm with those misrepresentations, although he fully acknowledges that he did cause such harm to the Secret Service Agents he befriended, the apartment complexes he defrauded, and his fellow residents whose privacy he invaded through his actions and of course to the apartment complexes who never recovered the rent they were due. He is extremely remorseful for those actions and hopes to be able to make amends.

Mr. Taherzadeh is not a continuing danger to the community. As he advised law enforcement in his lengthy custodial interview, he had no intention of compromising any federal agent. He acknowledged gifts to agents with whom he had a genuine friendship. He acted out of a desire for friendship, not to influence anyone. He never asked for anything from the officers he befriended, never gave them anything for the purpose of gaining something in response, and deeply regrets the harm he caused to the reputations and careers of these officers. (See Exh. 1)

**(3)     The History and Characteristics of the Defendant.**

"[A] defendant's past conduct is important evidence—perhaps the most important—in predicting his probable future conduct." *Pope v. United States*, 739 A.2d 819, 827 (D.C.App. 1999) (quoting *Cruz-Foster v. Foster*, 597 A.2d 927, 930 (D.C.1991)). Mr. Taherzadeh is a 40 year old man with no prior felony convictions. He does have misdemeanor convictions, but they are over a decade old and involved incarceration of just one month total. He is 41 years old and has the support of his family. He lives with his father who has provided tremendous support to him during this difficult time. (See Exh. 3). His brother too, supports him while not making excuses for his misconduct. (See Exh. 2).

Mr. Taherzadeh was raised by his father and is a good, kind-hearted person. He spends time with his brother's children and works with youth in his community.

While on release in this case, Mr. Taherzadeh obtained employment at a youth recreational facility where he has had a positive impact on his community. (See Exhs. 4, 5 and 6). He continues to have the support of friends and family despite the substantial negative press that was generated upon his arrest. (See Exh. 7). All of this will help ensure that he does not recidivate.

Mr. Taherzadeh is employed but has no significant assets. As the Probation Office has noted, he is not able to pay a fine in addition to the significant restitution owed.

**(4)     The Purposes of Sentencing.**

The Sentencing Reform Act requires the Court to impose a sentence that not only will reflect the seriousness of the offense and promote respect for the law, but also will provide just punishment, afford deterrence to criminal conduct, and protect the public from further crimes of the defendant.  Here, the Court can fully achieve these sentencing goals without imposing a term of incarceration.

Mr. Taherzadeh does not need to be further deterred.  The United States Sentencing Commission has identified increased age as a powerful predictor of reduced recidivism.  U.S.S.C., *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score* (Jan. 4, 2005), at 13-15, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2005/20050104_Recidivism_Salient_Factor_Computation.pdf.  The Sentencing Commission has reported that "[r]ecidivism rates decline relatively consistently as age increase." U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004), at 12 & Ex. 9, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf. The same study, and others, find employment, strong family ties, no criminal history, and a lack of substance abuse problems all lead to a much lower risk of recidivism.

Moreover, the empirical research regarding white collar offenders shows no difference between the deterrent effect of probation and that of imprisonment. *See* David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995). "[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders." Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 448-49 (2007).

Mr. Taherzadeh has already received significant punishment. He has been on supervision for more than 18 months and has been fully compliant. He served 7 days in jail and 4 months on 24 hour home incarceration. The length of pretrial supervision is certainly a factor this Court can consider in fashioning an appropriate sentence, especially since that delay has not been at his request, but rather to satisfy the needs of the government's prosecution of other individuals.

**(5)     The Kinds of Sentences Available.**

There is no mandatory minimum sentence and, in light of the government'motion for a downward departure, no requirement for any period of incarceration. Nevertheless, in light of the seriousness of the conduct, Mr. Taherzadeh understands a period of incarceration is appropriate.

**(6)     The Need to Avoid Unwarranted Disparities.**

Not all disparities in sentencing are prohibited – only *unwarranted* disparities. *See* 18 U.S.C. § 3553(a)(6). Here, a consideration of the § 3553 factors and the government's motion for a downward departure demonstrates that a short term of incarceration would be appropriate. Neither the JSIN data (which excludes defendants

who receive a downward departure under 5K1.1) nor the sentence imposed upon Mr. Ali who committed a separate, significant bank fraud, did not provide substantial assistance, and was equivocal about his acceptance of responsibility for his offenses, provide otherwise.

## CONCLUSION

The Court should grant the government's motion for a downward departure. In light of that downward departure and Mr. Taherzadeh's pretrial compliance, The Court should sentence him to a period of incarceration of no more than 18 months. We request that the Court recommend placement at the FCI Morgantown facility and allow him to self-surrender on a date designated by the BOP on or after January 2, 2024.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Michelle Peterson
Chief Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
Shelli_Peterson@fd.org